OPINION OF THE COURT
John V. Vaughn, J.
Defendant, having pleaded guilty to the charge of attempted criminal possession of a weapon in the third degree now moves for an order dismissing the indictment and transferring the subject matter of that indictment to the Family Court.
On the complaint of his wife, defendant was arrested on June 1, 1981 for the charges of criminal possession of a weapon in the third degree and menancing. He was subse *47 quently indicted on the weapons charge and on November 2, 1981, pleaded guilty to attempted criminal possession of a weapon in the third degree in full satisfaction of that indictment. Thereafter, the defendant requested an adjournment of his sentence in order to make this motion.
The basis for the defendant’s motion is that just prior to the sentencing he learned for the first time that his wife had never been advised that she had a right to choose the forum in which to proceed, to wit, the Family Court or the Criminal Court (Family Ct Act, § 812; CPL 530.11). In support of his motion, the defendant submits an affidavit from his wife in which she states that no one had advised her of her right to proceed against her husband in either the Family or the Criminal Court, and that if she had been so advised she would have selected the Family Court. She further alleges that the defendant works at two jobs to support her and the children and requests that the present prosecution be transferred to the Family Court.
The People concede that the arresting officer did not advise the complainant of her rights under the statute. The officer explained that he had not done so because he felt that the weapons charge did not fall within the meaning of the statute. He further alleged that he had advised the complainant in the past of her rights to choose the Family Court in connection with other incidents. The People argue that the motion should be denied because the defendant’s plea of guilty waived any procedural defect, and, in the alternative, that the weapons charge does not fall within the enumerated crimes specified in the statute (Family Ct Act, § 812).
The issues thus presented to the court are (1) whether a failure to advise a complaining spouse of her rights under the statute may be availed of by the defendant, and (2) whether the weapons charge falls within the meaning of the statute giving the injured spouse the right to choose to proceed in either the Family Court or the Criminal Court.
A review of the statutory scheme in existence prior to September 1, 1977 is helpful in placing the present provisions in proper prospective. Under the New York State Constitution and the implementing legislation in existence at that time, the Family Court was given exclusive origi *48 nal jurisdiction of enumerated family offenses (NY Const, art VI, § 13; Family Ct Act, former § 812). If a criminal action were instituted in the criminal courts it had to be transferred to the Family Court for disposition (Family Ct Act, former § 813). While the Family Court was empowered to retransfer a proper matter to the criminal courts (Family Ct Act, former § 816), the failure to initially institute the proceeding in the Family Court would vitiate any criminal conviction (People v Johnson, 20 NY2d 220). Under this framework, it was the court, and not the victim, which decided the ultimate appropriate forum.
In 1977 the Legislature, in response to criticism, abolished the former court-dominated transfer provisions in favor of an initial election by the aggrieved spouse to proceed in either the Family Court or the Criminal Court. Under this scheme, concurrent jurisdiction of enumerated family offenses was placed in both the Family and Criminal Courts (Family Ct Act, § 812; CPL 530.11). To assure an intelligent choice of forum, the Legislature mandated that certain admonitions be given to every complaining spouse amounting at the time of this offense to at least (Family Ct Act, § 812, subd 2; CPL 530.11):
“(a) That there is a concurrent jurisdiction with respect to family offenses in both family court and the criminal courts;
“(b) That a family court proceeding is a civil proceeding and is for the purpose of attempting to keep the family unit intact. Referrals for counseling, or counseling services, are available through probation for this purpose;
“(c) That a proceeding in the criminal courts is for the purpose of prosecution of the offender and can result in a criminal conviction of the offender;
“(d) That a proceeding or action subject to the provisions of this section is initiated at the time of the filing of an accusatory instrument or family court petition, not at the time of arrest, or request for arrest, if any;
“(e) That subject to the provisions of section eight hundred thirteen of this article, the filing of such accusatory instrument or family court petition constitutes a final choice of forum after seventy-two hours have elapsed from *49 such filing and bars any subsequent proceeding in an alternative court based on the same offense * * *
“(f) That an arrest may precede the commencement of a family court or a criminal court proceeding, but an arrest is not a requirement for commencing either proceeding.”
A subsequent transfer from the Family Court to the Criminal Court can only be made with the injured spouse’s consent (Family Ct Act, § 813), but there is no similar statutory provision for any subsequent transfer from the Criminal Court to the Family Court. The statute is silent on the effect of a failure to render the mandated admonitions to the complaining spouses, and there are few reported cases considering the effect of that failure.
In People v Garcia (98 Misc 2d 907), relied upon by the defendant, the court held that the statutory admonitions were a condition precedent to a binding election of remedies by the complaining spouse. There, as here, the complaining spouse alleged that she had never been officially advised of her right of election and that had she been so advised, she would have selected.the Family Court. In light of the noncompliance, the court dismissed the complaint and noted that it was dismissing, rather than transferring it to the Family Court, because there was no longer any statutory machinery in existence to effect a transfer to that court.
The Garcia rationale was followed in People ex rel. Bartolomei v Gray (NYLJ, Feb. 9, 1982, p 16, col 2). In that case, a Justices’ Court had initially directed a transfer of a family assault complaint to the Family Court after a hearing had determined that the complainant mother had not been advised of her right under the statute to choose that forum. When the Family Court refused to accept jurisdiction because more than 72 hours had elapsed from the filing of the felony complaint, the District Attorney obtained an indictment against the defendant. After the indictment he had the complainant mother execute a written form of election to proceed in the Criminal Court. On the writ, the Supreme Court ordered the matter transferred to the County Court to advise the complainant of her right of election and, further, if she then chose the Family *50 Court, the County Court was instructed to dismiss the indictment. Here too, the Supreme Court did not direct a transfer of the matter to the Family Court although it, like the County Court and unlike the Criminal Court, has constitutional authority to transfer matters to a court having jurisdiction (NY Const, art VI, § 19).
However, in People v Mack (53 NY2d 803) the court held that the admonitions required by section 812 of the Family Court Act did not go to the jurisdiction of the courts, and that any defect in compliance was waived by a plea of guilty. The court also intimated that the statutory provisions in question were intended to alert complainants of their rights to choose the proper forum and that defendants have no right to command that decision.
This court concludes that the right to make the initial selection of the forum is personal to the complainant even though that choice may adversely affect the ultimate consequences to the offender. Thus, mere technical noncompliance with the statute may not be availed of by the defendant where the complaining spouse does not assert her rights to the contrary.
However, where the complainant was not advised of the statutory right of election and now expresses a desire to do so, then the only way to effectuate the purpose of the statute is to permit an exercise of that right. In a proper case this may be accomplished by a dismissal of the charge and either a transfer of the subject matter to the Family Court or the institution of an original proceeding in that court. This remedy is not available where, as here, the defendant has pleaded guilty to the charge (see People v Mack, supra). Nevertheless since this procedural defect might yet be corrected at this stage by a proper motion to vacate the plea (CPL 220.60, subd 3; see People v Thomas, 78 AD2d 940; cf. People v Jones, 44 NY2d 76, cert den 439 US 846), this court must consider the second issue dealing with the issue of whether the weapons charge falls within the meaning of the statute giving the complaining spouse the right to elect to proceed in either the Criminal or Family Court.
The statute provides that the Criminal and Family Courts shall have concurrent jurisdiction over acts which *51 constitute “disorderly conduct, harassment, menacing, reckless endangerment, assault in the second degree, assault in the third degree or an attempted assault between spouses” (Family Ct Act, § 812). In this indictment, which charges criminal possession of a weapon in the third degree, we do not have one of the charges specifically enumerated in the statute, but there is a claim that the charge occurred in conjunction with a charge of menacing which was the subject matter of an action in the District Court. Inasmuch as the language of the present statute is substantially similar to the prior section of the Family Court Act, we can look to the cases under that earlier provision for some guidance.
In People v Wade (31 AD2d 657), the defendant had been indicted for burglary in the second degree, assault, second degree, and possession of a loaded firearm arising out of an altercation with his wife. In holding that the weapons charge should not be transferred to the Family Court, the court held (p 658) that it was a distinct crime which “stands independently of any assault committed or attempted with the weapon” and “is distinguishable from those cases in which assaults were committed with a knife or razor blade, possession of which cannot be separated from the concurrent assault or intent to assault, since it is the intention to commit the underlying assault which makes that possession a felony”.
Subsequently, in People v Williams (24 NY2d 274), relied upon by this defendant, the court held that the charges of burglary and possession of a dangerous weapon, together with the assault arising out of a stabbing of the defendant’s wife, should have been transferred to the Family Court. In this case, unlike Wade (supra) and the case at bar, the dangerous weapon charge was based upon the possession of a knife. The court stated (pp 286-287):
“In this case, however, the crimes charged, burglary and felonious possession of a dangerous weapon, rely on the assault, or the intent to commit it, as the only element of criminal conduct charged in the indictment. The burglary charge, without the intent to assault, fails and leaves only the criminally ambiguous fact that a husband broke into his wife’s apartment. For similar and even stronger rea *52 sons, without the assault the possession of the knife may not be criminal at all” and,
“In both instances here the assault charges have been converted to ‘non-assault’ charges, although the non-assault charges still depend on an intent which is found only in the assault. The purposes of the Family Court Act should not be subject to the likely circumvention such a practice would allow. Consequently, when assault and non-assault charges are inextricably related by a common element in the offenses, and not otherwise, the transaction lies in the first instance within the jurisdiction of the Family Court.”
This distinction between possession of a knife and a loaded revolver was followed in People v Mancuso (59 Misc 2d 941), when the court refused to transfer a misdemeanor charge of possession of a loaded revolver which had been discovered by the police when they responded to a family disturbance. The court held that the Williams case (supra), did not apply since wrongful possession of a revolver did not depend upon any intent by the defendant to use it against his spouse. The court further noted that there was not even an underlying charge of assault present upon which the possession of the gun might be said to rely.
However, the existence of an independent weapons charge was questioned in People v Diggs (72 Misc 2d 898). There, as in Mancuso (supra), the defendant was charged with only one count of criminal possession of a loaded revolver in the information. The court reviewed the facts in the supporting deposition and distinguished Mancuso by noting that the underlying facts would have supported charges of menacing, reckless endangerment or attempted assault. The court concluded that the People could not circumvent the intent of the Legislature by failing to bring proper charges, and held (p 901) that “a criminal court does have the jurisdiction to transfer a proceeding to the Family Court whenever the facts in a case contain the necessary elements to constitute an offense for which the Family Court has original jurisdiction.” While the People contend that the statement in this case is overly broad because, under that reasoning, even a murder charge (which includes an element of assault) would have to be transferred *53 to the Family Court, it is clear that implicit in the court’s holding was a finding that the uncharged crime was inextricably related to the wrongful possession by a common element. The District Court did not mention People v Wade (31 AD2d 657, supra) in its decision.
This conflict in authorities was recognized in People v Edge (76 Misc 2d 802). In that case the defendant was indicted for possession of a loaded firearm arising out of an assault on his wife. The court noted the Williams and Wade cases (supra), and the conflict between the Mancuso and Diggs cases (supra), concluding that Wade was still viable stating (p 804): “While the language in Fowlkes (24 N Y 2d 274, supra), pertaining to the relationship of a common element in crimes committed between spouses, is susceptible of different interpretations, it is this court’s opinion that the possession of that which is contraband per se, even if used in an assault between husband and wife, constitutes an independent crime which may be prosecuted by indictment without an initial referral to the Family Court.” A similar disposition was also made in People v Coady (79 Misc 2d 929).
This court does not believe that the holding in People v Jones (59 AD2d 617) is to the contrary. In that case the defendant had initially been charged with attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree. A motion to transfer the case to the Family Court was denied and the defendant was indicted for attempted murder and criminal possession of a weapon, second degree. The Appellate Division, citing Williams (24 NY2d 274, supra), held that the weapons charge should have been transferred, stating (p 618) “This jurisdiction extended to charges inextricably related to the assault, or which depended upon the intent to assault as a component part of the crime, such as felonious possession of a weapon”. The court did not mention its own prior holding in People v Wade (supra). While the Jones case dealt with the possession of a loaded firearm, it is noted that it was concerned with criminal possession of a weapon in the second degree which requires not *54 only possession, but an intent to use the same unlawfully against another (Penal Law, § 265.03). In this sense, it is not inconsistent with the holding in People v Wade (supra), where the charge of possession did not require any additional intent.
In any event, while this court concludes that even under the old case law the present charge of criminal possession of a weapon does not fall within the meaning of the statute (Family Ct Act, § 812) and thus, no right of election exists, there is a further reason for that conclusion. The above cases were all decided under the prior law where, under the scheme of things, the Family Court made the ultimate determination of whether to retain jurisdiction or retransfer the matter to the criminal courts (Family Ct Act, former § 816). Any abuse of discretion in that regard was subject to review on appeal (People v Davis, 27 AD2d 299; Matter of Montalvo v Montalvo, 55 Misc 2d 699; Family Ct Act, § 1112). Thus a broad interpretation of the acts falling within the original jurisdiction of the Family Court was appropriate.
Under the present law, however, it is not the court, but the complaining spouse who makes the determination of whether to proceed in a civil or criminal forum (Family Ct Act, §§ 812, 816; CPL 530.11). It is inconceivable that the Legislature intended to vest in the complaining spouse the power of determining, in the first instance, whether or not to prosecute criminally those criminal acts which are of danger, not only to the complaining spouse, but to the other members of the public at large (cf. Washington ex rel. Seattle Tit. Trust Co. v Roberge, 278 US 116; 16 Am Jur 2d, Constitutional Law, § 347). Unlawful possession of a loaded revolver is of such nature as it clearly poses a threat, not only to the spouse, but to society. The criminal act of possession of a loaded revolver exists not only before the family altercation, but also afterwards, where it continues to represent a serious danger to the community. Under these circumstances, the separate criminal act of possession of a loaded weapon should not be interpreted to fall within the meaning of the crimes enumerated in the statute.
*55 Accordingly, the motion is denied. This case is placed on the Sentencing Calendar for March 31, 1982.